1    **WO**

2

3

4

5

6                     **IN THE UNITED STATES DISTRICT COURT**

7                      **FOR THE DISTRICT OF ARIZONA**

8

9    Kent Terry, et al.,                          No. CV-12-02659-PHX-DGC

10                        Plaintiffs,             **ORDER**

11   v.

12   William Newell, et al.,

13                        Defendants.

14

15          Defendant Emory Hurley has filed a motion to dismiss (Doc. 52), as have

16   Defendants William Newell, George Gillett, David Voth, Hope McAllister, Tonya

17   English, and William McMahon (Doc. 53).  The motions are fully briefed.  For the

18   following reasons, the Court will grant Defendants' motions to dismiss.[1]

19   **I.    Background Facts.**

20          Plaintiffs are the parents of Border Patrol Agent Brian Terry, who was killed by

21   Mexican drug cartel operatives while on duty in the Arizona desert on December 15,

22   2010.  Defendant Emory Hurley is an Assistant United States Attorney ("AUSA").

23   Defendants William Newell, George Gillett, David Voth, Hope McAllister, Tonya

24   English, and William McMahon are agents and officers with the United States

25   Department of Alcohol, Tobacco, Firearms and Explosives ("ATF Defendants").

26

27   ───────────────

28          [1] The request for oral argument is denied because the issues have been fully
     briefed and oral argument will not aid the Court's decision.  *See* Fed. R. Civ. P. 78(b);
     *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

Plaintiffs allege that Mexican drug cartels funded and operated a firearms trafficking ring in the Phoenix-metropolitan area in 2009.  Doc. 32, ¶ 77-78.  Straw purchasers with clean backgrounds would certify to Federal Firearms Licensees that they were buying firearms for personal use and would then transfer them to cartel operatives.  *Id*., ¶ 50, 79, 91.  Plaintiffs allege that AUSA Hurley and the ATF Defendants "created, organized, implemented, and/or participated in a plan – code named 'Operation Fast and Furious' – to facilitate the distribution of dangerous firearms to violent criminals."  *Id*., ¶ 2.  The alleged strategy of Operation Fast and Furious (the "Operation") was to allow illegally purchased firearms to transfer into the hands of violent criminals, a practice known as "gunwalking."  *Id*., ¶ 65.  Such gunwalking, it was hoped, would result in the arrest of high ranking members of the Mexican drug cartel who were expected to procure the traced firearms from straw purchasers within the United States.  *Id*., ¶¶ 78-79, 94.  In furtherance of the Operation, AUSA Hurley and the ATF Defendants allegedly hindered other ATF agents and other law enforcement agencies from impeding the firearms trafficking conspiracy.  *Id*., ¶ 94.  Defendants intended to run interference with other law enforcement agencies until Defendants could obtain a wiretap which they believed would enable them to dismantle the entire organization.  *Id*., ¶¶ 94, 111, 140, 143.

Plaintiffs allege the ATF Defendants identified Lone Wolf Trading Company as one source of weapons sold to straw purchasers.  Defendants monitored straw sales by means of a hidden camera installed at Lone Wolf.  *Id*., at 97.  Plaintiffs allege that the ATF Defendants instructed Lone Wolf to continue making sales to suspicious purchasers and to share intelligence with them.  *Id*., ¶ 100.  Lone Wolf allegedly sold 619 weapons to straw purchasers between October 15 and December 31, 2010.  *Id*., ¶¶ 107-08.

On December 15, 2010, Agent Terry was shot and killed in the desert near Rio Rico, Arizona, eighteen miles inside the U.S.-Mexico border.  Plaintiffs allege that two of the weapons found at the scene had been sold by Lone Wolf and gunwalked by Defendants.  *Id*., ¶¶ 121, 123, 160.  Plaintiffs assert that their son's death resulted from Defendants' failure to intercept the illegally purchased weapons.  *Id*., ¶¶ 418, 429.

1    Plaintiffs' *Bivens* action relies on a state-created danger theory and seeks compensatory
2    and punitive damages against AUSA Hurley, the ATF Defendants, and Lone Wolf for
3    loss of familial association and on behalf of Agent Terry' estate, under the Fifth
4    Amendment Due Process Clause. *Id*., ¶¶ 9-10, 428, 444, 448, 450.

5    **II.     Legal Standard.**

6         Defendants move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1).
7    Defendants mount a facial attack on the Court's subject matter jurisdiction rather than
8    contesting specific factual allegations of the complaint.   In resolving such a facial
9    challenge, the Court assumes all of Plaintiffs' factual allegations to be true and draws all
10   reasonable inferences in their favor. *Doe v. Holy See*, 557 F.3d 1066, 1073 (9th Cir.
11   2009).[2]

12   **III.    Analysis.**

13        In *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*. 403 U.S.
14   388 (1971), the Supreme Court "recognized for the first time an implied private action for
15   damages against federal officers alleged to have violated a citizen's constitutional rights."
16   *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 66 (2001).  The *Bivens* court "proceed[ed] on
17   the theory that a right suggests a remedy." *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009).
18   *Bivens* allows a plaintiff to bring an action for damages against individual federal
19   officials for violating the Fourth Amendment despite the absence of any federal statute
20   authorizing such an action. *See Bivens*, 403 U.S. at 397.  The Supreme Court has also
21   recognized *Bivens* actions to redress violations of the Fifth and Eighth Amendments. *See*
22   *Davis v. Passman*, 442 U.S. 228 (1979); *Carlson v. Green*, 446 U.S. 14 (1980).

23        Since its 1980 decision in *Carlson*, the Supreme Court has "consistently refused to
24   extend *Bivens* liability to any new context or new category of defendants." *Malesko*, 534
25   U.S. at 68.  The Court instead has asked whether Congress intended courts to devise a
26   new *Bivens* remedy, and has declined to extend *Bivens* to embrace other constitutional

27   _____

28        [2]  Defendants also move to dismiss under Rule 12(b)(6).  Because the Court will
     grant the motion under Rule 12(b)(1), this order will not discuss Rule 12(b)(6).

1  violations.  *See, e.g.*, *Chappell v. Wallace*, 462 U.S. 296, 297 (1983) (declining to find an

2  implied right of action for military personnel who allegedly suffered racial discrimination

3  at the hands of superior officers); *Bush v. Lucas*, 462 U.S. 367, 368 (1983) (declining to

4  find an implied right of action for a federal civil-service employee who allegedly suffered

5  violations of his First Amendment rights); *Wilkie v. Robbins*, 551 U.S. 537, 561-62

6  (2007) (declining to find an implied right of action for a landowner who allegedly

7  suffered harassment and intimidation by federal officials in violation of the Fourth and

8  Fifth Amendments).

9       In *Wilkie*, the Supreme Court identified a two-step analysis for determining the

10  appropriateness of a *Bivens* remedy.  *Id.* at 550; *W. Radio Servs. v. U.S. Forest Service*,

11  578 F.3d 1116, 1120 (9th Cir. 2009).   First, the Court determines whether "any

12  alternative, existing process for protecting" the plaintiff's interests "amounts to a

13  convincing reason for the Judicial Branch to refrain from providing a new and

14  freestanding remedy in damages."  *Wilkie*, 551 U.S. at 550.  Such an alternative remedy

15  raises the inference that Congress "expected the Judiciary to stay its *Bivens* hand."  *Id.* at

16  554.  "When the design of a government program suggests that Congress has provided

17  what it considers adequate remedial mechanisms for constitutional violations that may

18  occur in the course of its administration, [the Supreme Court has] not created additional

19  *Bivens* remedies."  *Schweiker v. Chilicky*, 487 U.S. 410, 423 (1988).[3]

20       In *Bush*, the Supreme Court declined to recognize a *Bivens* action even though it

21  assumed a First Amendment violation had occurred and acknowledged that "existing

22  remedies do not provide complete relief for the plaintiff."  462 U.S. at 388.  Noting that

---

24      [3] Plaintiffs cite *Carlson* for the proposition that a *Bivens* action may be precluded

25  only "when defendants show that Congress has provided an alternative remedy which it explicitly declared to be a *substitute* for recovery directly under the Constitution and

26  viewed as equally effective," or when there are special factors counseling hesitation. Doc. 64 at 4 (emphasis in original).  To the extent *Carlson* requires a clear statement

27  from Congress before a remedial structure can preclude a *Bivens* action, that requirement has been repudiated by the Supreme Court.  *See Schweiker*, 487 U.S. at 423; *see also W.*

28  *Radio Servs.*, 578 F.3d at 1120 ("[S]o long as Congress' failure to provide money damages, or other significant relief, has not been inadvertent, courts should defer to its judgment.").

1  Congress is more competent than the Judiciary to carry out the necessary "balancing [of]
2  governmental efficiency and the rights of employees," the Court refused to "decide
3  whether or not it would be good policy to permit a federal employee to recover damages
4  from a supervisor who has improperly disciplined him for exercising his First
5  Amendment rights." *Id.* at 389-390.  "So long as the plaintiff ha[s] an avenue for some
6  redress, bedrock principles of separation of powers foreclose judicial imposition of a new
7  substantive liability." *Malesko*, 534 U.S. at 69.

8       At the second step of the *Wilkie* analysis, the Court asks whether there are "factors
9  counseling hesitation" before finding an implied *Bivens* right of action.  *Wilkie*, 551 U.S.
10  at 550.  Even where Congress has given plaintiffs no damages remedy for a constitutional
11  violation, the Court has declined to create a right of action under *Bivens* when doing so
12  "would be plainly inconsistent with Congress' authority in this field."  *Chappell*, 462
13  U.S. at 304.  For example, the Court found that "the unique disciplinary structure of the
14  Military Establishment and Congress' activity in the field" constituted special factors
15  counseling against finding a *Bivens* remedy for enlisted military personnel against
16  superior officers. *Id.* at 304.

17       This case can be resolved at step one of the *Wilkie* analysis.  Congress has
18  provided a comprehensive remedial scheme for Agent Terry's estate and survivors.  The
19  Federal Employees Retirement System ("FERS"), 5 U.S.C. §§ 8401, *et. seq.*, the Federal
20  Employees Compensation Act ("FECA"), 5 U.S.C. §§ 8101, *et. seq.*, and the Public
21  Safety Officer Benefits Acts ("PSOBA"), 42 U.S.C. § 3796, all provide benefits for the
22  survivors of federal employees who are killed in the course of their employment.  These
23  existing remedies "amount[] to a convincing reason for the Judicial Branch to refrain
24  from providing a new and freestanding remedy in damages." *Wilkie*, 551 U.S. at 550.

25       The FERS provides disability and death benefits to federal employees or their
26  survivors.   5 U.S.C. §§ 8402(b)(2)(B), 8403, 8424, 8432, 8441-8451; 5 C.F.R.
27  §§ 843.101, *et seq.*  Under 5 U.S.C. §§ 8442(b)(1)(A) and 8462(e), a surviving spouse
28  may receive 50% of the deceased employee's final annual basic pay, plus a $15,000

- 5 -

payment adjusted to reflect inflation.  Section 8443 provides benefits for a deceased employee's surviving children.  Section 8424 permits the parents of a deceased employee to recover benefits if the employee left no designated beneficiary, spouse, or children.

The FECA establishes a "comprehensive and exclusive compensation scheme for federal employees."  *Markham v. United States*, 434 F.3d 1185, 1187 (9th Cir. 2006).  The FECA provides that "[t]he United States shall pay compensation . . . for the disability or death of an employee resulting from personal injury sustained while in the performance of his duty[.]"  5 U.S.C. § 8102(a).  The FECA permits a spouse to receive up to 50% of a deceased employee's monthly pay.  5 U.S.C. § 8133(a)(1).  Children and parents of a deceased employee can also recover FECA benefits under certain circumstances.  5 U.S.C. §§ 8133(a)(3)-(4).  Most relevant here, FECA specifically states that it is the exclusive source of liability to the employee, spouse, or next of kin.  *Id.* § 8116(c); *United States v. Lorenzetti*, 467 U.S. 167, 169 ("[T]he United States' liability for work-related injuries under FECA is exclusive[.]").  Indeed, several federal district courts have found that the availability of FECA remedies precludes a *Bivens* claim.  *See Richards v. C.I.A.*, 837 F. Supp. 2d 574, 578 (E.D. Va. 2011); *Rivera v. Smith*, No. 1:10-CV-01015 AWIGSA, 2011 WL 902097, at *4 (E.D. Cal. March 15, 2011); *Williams v. Young*, 769 F. Supp. 2d 594, 600 n.6 (S.D.N.Y. 2011); *Briscoe v. Potter*, 355 F. Supp. 2d 30, 41-42 (D. D.C. 2004) *aff'd*, 171 Fed. App'x. 850 (D.C. Cir. 2005), *cert. denied*, 547 U.S. 1128 (2006); *Hightower v. U.S.*, 205 F. Supp. 2d 146, 157-58 (S.D.N.Y. 2002).  In addition, the Ninth Circuit has held that the FECA is relevant in a special factor analysis precluding recognition of a *Bivens* action brought by an injured employee or his survivors.  *Berry v. Hollander*, 925 F.2d 311, 315 (9th Cir. 1991).

The PSOBA provides benefits to survivors of federal and other law enforcement officers killed in the line of duty.  42 U.S.C. § 3796(a)(1)-(5).  The PSOBA also provides educational funding to the dependents of deceased public safety officers.  42 U.S.C. §§ 3796(d), *et seq*.  Along with the FECA, the PSOBA has been cited by federal district courts in declining to imply a *Bivens* right of action.  *Rivera*, 2011 WL 902097 at *4 n.2.

Plaintiffs argue that these federal statutes do not foreclose a *Bivens* claim because Plaintiffs have had no opportunity to adjudicate their claims in a public forum before a neutral arbiter.  Doc. 59 at 6; Doc 64 at 5.  The Supreme Court and Ninth Circuit have not required, however, that federal remedies provide a full panoply of due process protections before a *Bivens* action is precluded.   To the contrary, *Bivens* actions are foreclosed "where Congress has provided *some* mechanism for relief that it considers adequate to remedy constitutional violations." *Moore v. Glickman*, 113 F.3d 988, 991 (9th Cir. 1997) (emphasis added).

Plaintiffs further argue that the federal statutes cited above "offer no . . . forum for the vindication of a constitutional claim against a federal officer."  Doc. 64 at 6, 7.  The Supreme Court has held, however, that "the presence of alleged unconstitutional conduct that is not *separately* remedied under the statutory scheme [does not] imply that the statute has provided 'no remedy' for the constitutional wrong at issue."  *Schweiker*, 487 U.S. at 427-28 (emphasis in original).  Thus, a *Bivens* action may be precluded where statutory remedies do not separately provide relief for the alleged constitutional violations that caused injury.

Plaintiffs argue that a *Bivens* claim should not be precluded in this case because the statutory scheme provides no separate deterrence for government wrongdoing, a primary policy reason for creating the *Bivens* remedy in the first place.  Doc. 59 at 6.  *Wilkie* explained, however, that "any freestanding damages remedy for a claimed constitutional violation has to represent a judgment about the best way to implement a constitutional guarantee; it is not an automatic entitlement no matter what other means there may be to vindicate a protected interest, and in most instances we have found a *Bivens* remedy unjustified."  551 U.S. at 500.  Plaintiffs seem to suggest that the strong deterrent policies undergirding *Bivens* permit a court to imply a damages action where the available statutory remedies compensate a plaintiff for injuries but do not also adequately discourage a government agent's misconduct.   Under such a reading of *Bivens*, a damages action would be implied whenever a remedial statutory scheme fails to

1   impose a penalty of some sort on the government actor who caused the injury.  The Court

2   cannot accept such a broad interpretation of *Bivens*.  The Supreme Court has made clear

3   during the last 30 years that it is not the prerogative of the judiciary to create *Bivens*

4   causes of action whenever a judge deems a Congressional remedial scheme to be

5   deficient in some respect.  *Wilkie*, 551 U.S. at 550, 554; *Malesko*, 534 U.S. at 69;

6   *Schweiker*, 487 U.S. at 423; *Chappell*, 462 U.S. at 304.

7          Plaintiffs argue that permitting the PSOBA to be construed in a manner that

8   precludes a *Bivens* action would "conflict with the goal of attempting to remediate the

9   harm from a fallen officer's death in service of their country."  Doc. 64 at 6-7.  Plaintiffs

10  seem to argue that construing the PSOBA – a statute designed to provide relief to the

11  survivor of an officer killed in the line of duty – in a manner that precludes a *Bivens*

12  action defeats the goal of providing compensation to families.  But the compensation

13  available under the PSOBA is intended to remedy precisely the harm that Plaintiffs have

14  suffered, namely the tragic death of their son.  It is not the proper role of this Court to

15  second-guess the remedial scheme established by Congress, find it insufficient, and

16  impose an additional judicially-crafted remedy.

17         The Court recognizes that Plaintiffs have suffered a great loss, and that any

18  financial remedy is likely insufficient to redress their injury.  But as the Supreme Court

19  has made clear, the bedrock principle of separation of powers counsels against judicially-

20  created remedies when Congress has established a remedial scheme.  Congress has done

21  so here, and the Court therefore concludes that a *Bivens* action cannot be implied.

22         **IT IS ORDERED** that Defendants' motions to dismiss (Docs. 52, 53) are

23  **granted**.

24         Dated this 15th day of November, 2013.

25

26

27

28  _____
                    David G. Campbell
                    United States District Judge

- 8 -