**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kent Terry, et al., | No. CV-12-02659-PHX-DGC |
| Plaintiffs, | **ORDER** |
| v. | |
| William Newell, et al., | |
| Defendants. | |

Defendant United States has filed a motion to dismiss (Doc. 114) the crossclaim of Defendants Lone Wolf Trading Company, L.L.C. and Andre Howard (Doc. 107). The motion is fully briefed. The Court will grant in part and deny in part the United States' motion.[1]

**I.    Background.**

On December 15, 2010, Border Patrol Agent Brian Terry was killed in the Arizona desert. *See* Doc. 1. Two years later, Brian Terry's parents ("Plaintiffs") sued several United States agents, Lone Wolf Trading Company, L.L.C. ("Lone Wolf"), and Lone Wolf's owner, Andre Howard. *Id*; Doc. 32. Plaintiffs claimed that the United States had devised a complex operation that came to be known as "Operation Fast and Furious." Doc. 1. As a part of this operation, United States agents allegedly requested Lone Wolf to sell guns to straw purchasers who then distributed the guns to Mexican drug cartels.

---

[1] Lone Wolf's request for oral argument is denied because the issues have been fully briefed and oral argument will not aid the Court's decision. *See* Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

*Id.* Plaintiffs alleged that the guns used to kill Brian Terry were initially acquired from Lone Wolf as a part of this operation. *Id.* Lone Wolf, in turn, filed a crossclaim against the United States agents, seeking indemnity and damages. Doc. 48.

In a series of orders, the Court dismissed Plaintiffs' claims against the various United States agents (Doc. 68); granted the United States' motion to substitute itself as a defendant with respect to the Lone Wolf's crossclaim (Doc. 70); and granted in part and denied in part Lone Wolf's motion to amend its answer and crossclaim (Doc. 105). This left standing Plaintiffs' state-law claims against Lone Wolf and Lone Wolf's crossclaim against the United States. The United States has now moved to dismiss Lone Wolf's crossclaim for lack of subject matter jurisdiction and failure to state a claim. Doc. 114. The United States also argues that the Court can no longer exercise supplemental jurisdiction over Plaintiffs' claims against Lone Wolf. *Id.*[2]

## II.     Lone Wolf's Crossclaim.

Lone Wolf's crossclaim recounts how federal agents approached Lone Wolf's owner, Andre Howard, and encouraged him to sell guns to particular purchasers as part of an ongoing criminal investigation. *Id.*, ¶ 61. After several purchases, Howard asked the federal agents whether they were later retrieving the guns. *Id.*, ¶ 64. The agents reassured Howard "that ATF was tracking the weapons and intercepting them[.]" *Id.*, ¶ 65. Lone Wolf alleges that the federal agents in fact allowed the guns to be transferred to Mexican drug cartels. *Id.*, ¶ 75.

---

[2] As a preliminary matter, there is a question as to whether the United States is permitted to file this motion to dismiss. On the day that Lone Wolf filed its motion to amend its answer and crossclaim, the Court held a status conference with the parties. Doc. 96. During that conference, the Court suggested that the United States could not file both an opposition to Lone Wolf's motion to amend and, if that failed, a motion to dismiss Lone Wolf's amended crossclaim. *See* Doc. 116-1 at 2. Nevertheless, this was precisely what the United States did. Lone Wolf and Plaintiffs then filed motions to prevent the United States from filing a motion to dismiss and requested sanctions. Doc. 116; Doc. 122. Lone Wolf also reiterated these arguments in its response to the United States' motion to dismiss. Doc. 126. At a case management conference on September 4, 2014, the Court denied Lone Wolf's and Plaintiffs' motions (Doc. 116; Doc. 122), finding that the United States was allowed to file its motion to dismiss. Doc. 130. Therefore, the Court will not reconsider Lone Wolf's arguments (Doc. 126) that the United States has waived any arguments not included in its original opposition to Lone Wolf's motion to amend.

1  During Lone Wolf and Andre Howard's initial participation in the operation, they
2  suffered a variety of injuries.  They allege that federal agents installed video cameras on
3  their property and, without permission, operated the cameras twenty-four hours a day (*id.*,
4  ¶ 78); that federal agents were behind a theft of numerous guns from Lone Wolf's store
5  (*id.*, ¶ 81);  and that federal agents performed "threat assessments" on Andre Howard in
6  order to "harass and intimidate" him.  *Id.*, ¶¶ 83-85.  Sometime later, at an unspecified
7  date, Lone Wolf's participation in "Operation Fast and Furious" came to light.  *Id.*, ¶ 86.
8  Because of this, Lone Wolf sustained financial and reputational losses as "legitimate gun
9  purchasers" would no longer deal with the company.  *Id.*, ¶¶ 92, 99.  Andre Howard
10 experienced emotional distress and anxiety.  *Id.*, ¶¶ 96-98.  The crossclaim also alleges
11 that federal agents "published untrue accounts" of Lone Wolf's involvement in the
12 operation, further damaging its reputation.  *Id.*, ¶¶ 87-88.  Finally, federal agents
13 encouraged Lone Wolf to help in the cover-up of the operation.  *Id.*, ¶¶ 89-90.

14  Lone Wolf has brought a claim for indemnity against any judgment Plaintiffs
15 might win against it.  *Id.*, ¶¶ 100-08.  Beyond this, the crossclaim focuses exclusively on
16 the tort of negligence.[3]  Lone Wolf asserts that the United States had a duty to Lone Wolf
17 because federal agents had agreed to prevent the transfer of guns purchased from Lone
18 Wolf, thereby "assuming" a duty to prevent the transfer of those guns.  *Id.*, ¶¶ 109-14.
19 Alternatively, the United States had a duty to Lone Wolf because it formed a "special
20 relationship" with Lone Wolf.  *Id.*, ¶¶ 127-32 (citing *Gibson v. Kasey*, 150 P.3d 228
21 (Ariz. 2007)).  The United States allegedly breached this duty by negligently allowing
22 guns to be transferred to drug cartels.  Doc. 107, ¶¶ 118-20.  Alternatively, the United
23 States breached its duty by failing to follow its own regulations.  *Id.*, ¶¶ 122-26.

24  Significantly, this negligence claim does not appear related to the injuries Lone
25 Wolf suffered during its initial participation in the operation, namely, the improper use of
26 video cameras, the theft of guns from Lone Wolf's store, and the performance of threat

---

[3] Lone Wolf asserts five claims against the United States. Doc. 107, ¶¶ 100-32. The first of these is for indemnity. The remaining four claims appear to address the different elements of the tort of negligence, and will be treated as such.

assessments. Nor does the claim appear related to the publication of "untrue accounts" of Lone Wolf's involvement (*id.*, ¶¶ 87-88), which would more appropriately be addressed by a claim for libel or slander. Rather, the focus is on the injuries Lone Wolf suffered because federal agents negligently allowed the transfer of Lone Wolf's guns to Mexican drug cartels. *See id.*, ¶¶ 104, 111-14, 118-21, 123. Specifically, when the public learned of the operation and Lone Wolf's participation in it, Lone Wolf and Andre Howard suffered financial, reputational, and emotional injuries. The United States has not addressed whether a negligence claim for these injuries is cognizable under Arizona law, and the Court will not do so here. Rather, the United States attacks Lone Wolf's claim on other grounds.

## III. Analysis.

The United States presents four arguments in support of its motion to dismiss: (1) 28 U.S.C. § 2680(h) bars Lone Wolf's tort claim because the claim is based on misrepresentations by federal agents; (2) the exclusive-liability provision of the Federal Employees' Compensation Act bars Lone Wolf's claim for indemnity; (3) the Federal Tort Claims Act's statute of limitations bars Lone Wolf's tort claim; and (4) the Court no longer has subject matter jurisdiction over Plaintiffs' claims against Lone Wolf.

### A. Misrepresentation.

Absent a waiver, sovereign immunity shields the federal government and its agencies from suit. *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994). The Federal Tort Claims Act ("FTCA") waives the federal government's sovereign immunity for torts committed by federal employees. 28 U.S.C. §§ 1346(b), 2674. The government retains its immunity as to certain torts, however, including the tort of misrepresentation. 28 U.S.C. § 2680(h).

Sovereign immunity is preserved under § 2680(h) for claims "arising out of" both negligent and intentional misrepresentation. *United States v. Neustadt,* 366 U.S. 696, 702 (1961). In deciding whether a claim arises out of misrepresentation, the Court "looks beyond the labels used" by the plaintiff. *Thomas-Lazear v. F.B.I.*, 851 F.2d 1202, 1207

(9th Cir. 1988). As explained by the Supreme Court:

> [T]he essence of an action for misrepresentation, whether negligent or intentional, is the communication of misinformation on which the recipient relies. Section 2680(h) thus relieves the Government of tort liability for pecuniary injuries which are *wholly attributable* to reliance on the Government's negligent misstatements. . . . [The section] does not bar negligence actions which focus not on the Government's failure to use due care in communicating information, but rather on the Government's breach of a different duty.

*Block v. Neal*, 460 U.S. 289, 296-97 (1983) (emphasis added). Although not explicitly stated, case law teaches that a claim arises out of misrepresentation when the claimant's injuries would not have occurred but for a misrepresentation. *See id.*; *Pauly v. U.S. Dep't of Agri.*, 348 F.3d 1143, 1151 (9th Cir. 2003) (finding § 2680(h) applied because the injuries "are entirely the result" of misrepresentation); *Thomas-Lazear*, 851 F.2d at 1207 (the relevant conduct must be "essential" for § 2680(h) to apply). Thus, the government "is liable for injuries resulting from negligence in performance of operational tasks even though misrepresentations are collaterally involved." *Guild v. United States*, 685 F.2d 324, 325 (9th Cir. 1982).

If Lone Wolf's claim arises out of misrepresentation, the government's sovereign immunity would bar the claim and the Court would lack subject matter jurisdiction. *See F.D.I.C.*, 510 U.S. at 475 ("Sovereign immunity is jurisdictional in nature."). The United States' motion under Rule 12(b)(1) is a facial attack on the Court's jurisdiction, as the government "asserts that the allegations contained in the complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer,* 373 F.3d 1035, 1039 (9th Cir. 2004); *see also Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1040 n.2 (9th Cir. 2003) (distinguishing facial and factual attacks on jurisdiction). In a facial attack, the Court "'assume[s] plaintiff's factual allegations to be true and draw[s] all reasonable inferences in his favor.'" *Doe v. Holy See,* 557 F.3d 1066, 1073 (9th Cir. 2009) (quoting *Wolfe v. Strankman,* 392 F.3d 358, 362 (9th Cir. 2004)).

At this stage, the Court cannot say that Lone Wolf's injuries are "wholly attributable to reliance" on misrepresentations by federal agents. *See Block*, 460 U.S. at

- 5 -

297. The United States reads the crossclaim as asserting that the misrepresentations by federal agents were the only reason Lone Wolf participated in the operation and suffered injuries. The alleged misrepresentations undoubtedly played an important role in Lone Wolf's decision to participate, but they were not the sole reason. Lone Wolf also asserts that it needed to be "responsive to a request by . . . federal law enforcement officers," particularly because it was a licensee of the ATF "whose officers and agents were requesting and encouraging the assistance of cross-claimants." Doc. 107, ¶ 67; s*ee also id.*, ¶ 97. Reading the crossclaim as a whole, it would appear that the alleged misrepresentations and the inherent pressure of dealing with the federal government were reasons for Lone Wolf's participation.[4] In other words, even if federal agents had not made the misrepresentations or had simply refused to say what would happen to the guns, Lone Wolf may still have chosen to participate. Indeed, Lone Wolf alleges that it began to participate before the misrepresentations were made.[5] Doc. 107, ¶ 62. In this Circuit, "the Government is liable for injuries resulting from negligence in performance of operational tasks even though misrepresentations are collaterally involved." *Guild*, 685 F.2d at 325. Thus, the United States may be liable for its negligence in conducting "Operation Fast and Furious" even though misrepresentations played a role in Lone Wolf's decision to participate.

---

[4] In one part of the crossclaim, Lone Wolf states that "[t]he only reason cross-claimants sold the guns . . . was because the employees of the United States required them to make the sales and assured them that the sold guns would be interdicted . . . ." *Id.*, ¶ 103. The United States cites this paragraph as proof that the misrepresentations were the "only reason" Lone Wolf participated in the operation. *See* Doc. 114 at 10. Even in this paragraph, however, Lone Wolf is clear that the inherent pressure of dealing with the federal government was also a reason for its participation.

[5] This distinguishes *Lawrence v. United States*, 340 F.3d 952 (9th Cir. 2003), on which the United States relies. Doc. 131 at 7. In *Lawrence*, the plaintiff suffered sexual abuse from a man working at a foster home. *Id.* at 954. When the foster home had initially hired the man, he was a participant in the Federal Witness Security Program. *Id.* As part of the foster home's background check, the foster home talked with the man's supervising officer. *Id.* The officer misrepresented the man's criminal record; specifically, he failed to inform the foster home that the man had been involved in a crime of violence. *Id.* The foster home had a policy of refusing to hire persons convicted of a crime of violence. *Id.* But for the misrepresentation, the man would not have been hired and the plaintiff would not have been abused. The court, therefore, found that § 2680(h)'s misrepresentation exception applied. *Id.* at 958.

1    The United States relies on *Leaf v. United States*, 661 F.2d 740 (9th Cir. 1981),
2 which stated that "misrepresentation was definitely a *significant factor* relied upon by
3 plaintiffs in maintaining their suit, and the suit is therefore barred by [§ 2680(h)]." *Id.* at
4 742 (emphasis added).  But the suggestion in *Leaf* that misrepresentation need only be a
5 "significant factor" for § 2680(h) to apply conflicts with the Supreme Court's later
6 decision in *Block v. Neal*, 460 U.S. 289 (1983), which held that § 2680(h) applies when a
7 plaintiff's injuries "are wholly attributable to reliance on the Government's [false
8 statements]."  *Id.* at 297.  *Block* found that § 2680(h) did not apply because "the
9 Government's misstatements [were] not *essential* to plaintiff's negligence claim."  *Id.*
10 (emphasis added); *see also Sabow v. United States*, 93 F.3d 1445, 1456 (9th Cir. 1996)
11 ("We focus our § 2680(h) inquiry on whether conduct that constitutes an enumerated tort
12 is 'essential' to a plaintiff's claim.").  Drawing all reasonable inferences in favor of Lone
13 Wolf, *see Holy See*, 557 F.3d at 1073, the crossclaim suggests that the agents' alleged
14 misrepresentations are not essential to Lone Wolf's claims – that there were other reasons
15 Lone Wolf chose to participate in the operation.  The Court therefore finds that § 2680(h)
16 does not bar Lone Wolf's claims.

17    **B.    Indemnity.**

18    Lone Wolf seeks indemnity from the United States for any judgment Plaintiffs
19 might obtain against Lone Wolf.  Doc. 107, ¶¶ 100-08.  The United States argues that the
20 Federal Employees' Compensation Act's ("FECA") exclusive-liability provision bars this
21 claim for indemnity.  *See* Doc. 114 at 12-18.  The exclusive-liability provision states:

> The liability of the United States . . . under this subchapter or any extension thereof with respect to the injury or death of an employee is exclusive and instead of all other liability of the United States . . . to the employee, his legal representative, spouse, dependents, next of kin, and any other person entitled to recover damages from the United States . . . .

26 5 U.S.C. § 8116(c).  The United States does not dispute that Lone Wolf may seek
27 indemnity under the FTCA.  The FTCA is clear that the United States shall be liable for
28 tort claims "in the same manner and to the same extent as a private individual under like

- 7 -

circumstances." 28 U.S.C. § 2674. The United States instead argues that because Brian Terry was a federal employee, FECA's exclusive-liability provision absolves the government of liability for indemnity.

The Supreme Court has found that "FECA's exclusive liability provision, 5 U.S.C. § 8116(c), does not directly bar a third-party indemnity action against the United States." *Lockheed Aircraft Corp. v. United States*, 460 U.S. 190, 199 (1983). Rather, the provision "was intended to govern only the rights of employees, their relatives, and people claiming through or on behalf of them." *Id.* at 196. The Court, however, left open the possibility that this provision might indirectly bar claims for indemnity. *See Bush v. Eagle-Picher Indus., Inc.*, 927 F.2d 445, 450-51 (9th Cir. 1991).

In determining how FECA's exclusive-liability provision affects a FTCA claim for indemnity, courts look to the provisions of the FTCA. *See LaBarge v. Mariposa Cnty.*, 798 F.2d 364, 368 (9th Cir. 1986). The FTCA directs "the courts to analogize the government to a private actor in a similar situation and apply state law to determine amenability to suit and substantive liability." *Id.* at 366; *see* 28 U.S.C. § 1346(b). This means that "[b]ecause FECA is comparable to a state workers' compensation law . . . the United States should be entitled to the same immunity from suit enjoyed by a private employer covered by state workers' compensation laws." *Bell Helicopter v. United States*, 833 F.2d 1375, 1378 (9th Cir. 1987) (citing *Labarge*, 798 F.2d at 366-67); *see also In re McAllister Towing & Transp. Co., Inc.*, 432 F.3d 216, 222 (3d Cir. 2005); *Walls Indus., Inc. v. United States*, 958 F.2d 69, 71 (5th Cir. 1992); *In re All Maine Asbestos Litig.*, 772 F.2d 1023, 1027 (1st Cir. 1985). Thus, the key issue is whether Arizona's Workers' Compensation Act protects a private employer in a similar situation from a claim for indemnification.

Under Arizona's Workers' Compensation Act, private employers must secure compensation for employees who are injured by an accident in the course of their employment. A.R.S. §§ 23-961, 23-1021. An employee's right to receive compensation under the Act is the employee's "exclusive remedy against the employer . . . [unless] the

1  injury is caused by the employer's wilful misconduct." A.R.S. § 23-1022(A); *see also*
2  A.R.S. § 23-1022(B) (defining wilful misconduct as "an act done knowingly and
3  purposely with the direct object of injuring another."). Employers who secure
4  compensation in accordance with the Act "shall not be liable for damages at common law
5  or by statute" unless the employee waived his rights under the Act before the injury
6  occurred. A.R.S. § 23-906. The Act does not specify whether an employer who
7  complies with the Act may be liable to a third-party for indemnity.

8  In *Unique Equip. Co. v. TRW Vehicle Safety Sys., Inc.*, 3 P.3d 970 (Ariz. Ct. App.
9  1999), the Arizona Court of Appeals settled this issue. The court found that when an
10 employee covered by the Act sues a third-party, "the exclusive remedy provisions of
11 Arizona's Workers' Compensation Act bar the [third-party] from seeking common-law
12 indemnification from the employer." *Id*. at 973. An exception to this rule exists if the
13 employer has expressly contracted to indemnify the third-party. *Id.* (citing *Superior Cos.*
14 *v. Kaiser Cement Corp.*, 733 P.2d 1158, 1163 (Ariz. Ct. App. 1986)). The court found,
15 however, that an implied contract to indemnify would generally be insufficient to escape
16 the Act's exclusive remedy provisions. *Unique*, 3 P.3d at 973 (noting that "most
17 jurisdictions reject the implication of indemnity against an employer covered by the
18 exclusivity provisions of a workers' compensation act").

19 Lone Wolf argues that it is entitled to indemnity because, under Arizona law,
20 when two parties are liable for an injury, the party who is only secondarily at fault may
21 seek indemnification from the party who is primarily at fault. *See* Doc. 107 at 18 (citing
22 *Busy Bee Buffet, Inc. v. Ferrell*, 310 P.2d 817, 821 (Ariz. 1957)). While this proposition
23 may be true as a general matter, it is does not apply to third-party indemnification claims
24 under the Arizona Workers' Compensation Act, which provides the rule of decision here.
25 *Bell Helicopter*, 833 F.2d at 1378 ("the United States should be entitled to the same
26 immunity from suit enjoyed by a private employer covered by state workers'
27 compensation laws."). As discussed above, a private employer in a similar situation as
28 the United States would not be liable for indemnity under Arizona law. *See Unique*, 3

P.3d at 973.

Lone Wolf argues that because "the government cannot meet the statutory requirements" of Arizona's Workers' Compensation Act, the exclusive-remedy provision does not apply. *See* Doc. 126 at 10. Under the FTCA, however, the United States is liable "to the same extent as a private individual under *like* circumstances," 28 U.S.C. § 2674 (emphasis added), not under the *same* circumstances. *See Bell Helicopter*, 833 F.2d at 1378 ("Since the federal government could never be exactly like a private actor . . . it is a court's job to find the most reasonable analogy."). As explained above, a private employer in Arizona who secures compensation for its employees under the exclusive-liability provision of the Workers Compensation Act is not liable to a third party for indemnity. By analogy, the United States, having secured compensation for Agent Terry under the exclusive-liability provision of FECA, is not liable for indemnity.

Lone Wolf also argues that the Act's exclusive-remedy provision does not apply because of the intentional – or "extreme and outrageous" – nature of the government's conduct in this case. *See* Doc. 126, 10-11. But the Act states that the exclusive-remedy provision applies unless the "injury is caused by the employer's wilful misconduct," which is defined as "an act done knowingly and purposely with the direct object of injuring another." A.R.S. § 23-1022. Neither Plaintiffs nor Lone Wolf has alleged that the government acted with the direct object of injuring another. The exception does not apply.[6]

---

[6] There is an additional issue that Lone Wolf only indirectly addresses (Doc. 126 at 10-11). The issue is whether Brian Terry's death would qualify as an "accident" under Arizona's Workers' Compensation Act. The Act, as well as the Act's bar on third-party claims for indemnity, only applies to claims arising from accidental injuries. *See* A.R.S. § 23-1021; *Unique*, 3 P.3d at 975. For an injury to be accidental, it must be "unusual" or "unexpected." *See Ford v. Revlon*, 734 P.2d 580, 586 (Ariz. 1987); *Dugan v. Am. Exp. Travel Related Servs. Co., Inc.*, 912 P.2d 1322, 1328 (Ariz. Ct. App. 1995). "[A]n injury is caused 'by accident' when either the external cause or the resulting injury itself is unexpected or accidental." *Paulley v. Indus. Comm'n*, 371 P.2d 888, 893 (Ariz. 1962). Thus, when an employee injures his hand by deliberately punching a metal door, the injury is "self-inflicted" and not "accidental." *Glodo v. Indus. Comm'n of Ariz.*, 955 P.2d 15, 19 (Ariz. Ct. App. 1997). Conversely, when an employer allows employees to work in a ditch despite repeated warnings of a possible cave-in, the resulting injury is nonetheless "accidental." *Serna v. Statewide Contractors, Inc.*, 429 P.2d 504, 508 (Ariz. Ct. App. 1967); *see also Ortiz v. Clinton*, 928 P.2d 718 (Ariz. Ct. App. 1996). Thus, "an

1    The Court finds that Lone Wolf has failed to state a claim for indemnity.  The Court need not address the government's additional arguments for dismissal of Lone Wolf's indemnity claim.  *See* Doc. 114 at 14-16 (citing *MT Builders, L.L.C. v. Fisher Roofing, Inc*. 197 P.3d 758, 774 (Ariz. Ct. App. 2008); *Herstam v. Deloitte & Touche, LLP*, 919 P.2d 1381, 1388 (Ariz. Ct. App. 1996)).

**C.    Time Bar.**

The United States argues that Lone Wolf's claims are barred by the FTCA's statute of limitations.  "[T]he statute of limitations defense . . . may be raised by a motion to dismiss . . . [i]f the running of the statute is apparent on the face of the complaint."  *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980).  Even if the relevant dates alleged in the complaint are beyond the statutory period, however, the "'complaint cannot be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim.'"  *Hernandez v. City of El Monte*, 138 F.3d 393, 402 (9th Cir. 1998) (quoting *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1206 (9th Cir. 1995); *see Cervantes v. City of San Diego*, 5 F.3d 1273, 1275 (9th Cir. 1993).

Under the FTCA, a "tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues[.]"  28 U.S.C. § 2401(b).  In this case, Lone Wolf was not required to

---

'accident' is any work-connected injury between the extremes of a 'purposely self-inflicted' injury . . . and one inflicted by [another] acting 'knowingly and purposely with the direct object of injuring' the employee."  *Ford*, 734 P.2d at 589 (Feldman, J., concurring); *see also Johnson v. Kerr-McGee Oil Indus., Inc.*, 129 Ariz. 393, 398, 631 P.2d 548, 553 (Ariz. Ct. App. 1981) (finding that "gross, wanton, wilful, deliberate, intentional, reckless" behavior does not make an injury non-accidental).  Agent Terry's injury was sufficiently accidental for the United States to be in an analogous position to employers under the Act.  The Court notes that *Ford* found that an injury was not "accidental" when it was caused by an employer's intentional infliction of emotional distress, even if the employer acted with mere reckless disregard as to the possibility of injury.  734 P.2d at 586.  But *Ford* is properly limited to the special circumstances surrounding the tort of intentional infliction of emotional distress.  *See id.* at 586 (emphasizing that the injury was non-accidental because it was "not unexpected and was essentially *nonphysical*") (emphasis added); *see also Green v. Wyman-Gordon Co.*, 664 N.E.2d 808, 815 n.15 (Mass. 1996) (noting common exception for psychological injuries under workers' compensation laws).

- 11 -

1  exhaust its administrative remedies by presenting its claim to a federal agency because
2  crossclaims are exempt from the exhaustion requirement under 28 U.S.C. § 2675(a).
3  Doc. 105.  The government argues that, even though Lone Wolf was not required to
4  exhaust its administrative remedies before filing its crossclaim, Lone Wolf must still file
5  an administrative claim within the two-year limitations period because that requirement is
6  contained in a portion of the FTCA separate from the exhaustion provisions.  *See* 28
7  U.S.C. §§ 2401(b), 2675.

8        A claim under the FTCA accrues "'when a plaintiff knows or has reason to know
9  of the injury which is the basis of his action.'"  *Hensley v. United States*, 531 F.3d 1052,
10  1056 (9th Cir. 2008) (quoting *Gibson v. United States,* 781 F.2d 1334, 1344 (9th Cir.
11  1986)).  Ignorance of the involvement of government employees is irrelevant to accrual
12  of a federal tort claim.  *Hensley*, 531 F.3d at 1056 (citing *Dyniewicz v. United States,* 742
13  F.2d 484, 487 (9th Cir. 1984)).

14        Lone Wolf claims that the United States' negligence caused Lone Wolf and Andre
15  Howard emotional, reputational, and financial harm.  Although the government argues
16  that Lone Wolf and Howard "arguably" sustained emotional injuries even before Agent
17  Terry was murdered, and that their reputational and financial injuries occurred "no later
18  than" when their involvement in Operation Fast and Furious became publicly known, the
19  government provides no dates for when it believes the claims accrued.  Doc. 114 at 23-
20  24.  Nor do the pleadings state when Lone Wolf knew or had reason to know of these
21  injuries.  Lone Wolf claims that it did not know of the relevant facts "until recently
22  learned of information from Congressional hearings," but again provides no dates for
23  these events.  Doc. 126 at 13.

24        Given the very general nature of these arguments, the Court cannot say that "it
25  appears beyond doubt that the plaintiff can prove no set of facts that would establish the
26  timeliness of the claim."  *Supermail*, 68 F.3d at 1206; *see also TwoRivers v. Lewis*, 174
27  F.3d 987, 991 (9th Cir. 1999).  The Court therefore denies the United States' motion to
28  dismiss Lone Wolf's tort claims for failure to comply with 28 U.S.C. § 2401(b).

### D. Supplemental Jurisdiction.

The United States argues that because the Court originally dismissed all of Plaintiffs' federal claims for lack of subject matter jurisdiction, the Court cannot exercise supplemental jurisdiction over Plaintiffs' remaining state-law claims. Doc. 114 at 23 (citing *Herman Family Revocable Trust v. Teddy Bear*, 254 F.3d 802, 806 (9th Cir. 2001) (finding that if the court dismisses federal claims under Rule 12(b)(1), "supplemental jurisdiction can never exist")). On November 15, 2013, the Court dismissed Plaintiffs' *Bivens* claim against various federal agents. Doc. 68. The Court stated that it was dismissing that claim under Rule 12(b)(1) for lack of subject matter jurisdiction – the relief requested by the moving defendants. *Id.*; Doc. 52. The Court entered final judgment on the claim (Doc. 79) and Plaintiffs filed a notice of appeal (Doc. 86).

Subsequently, the Court amended its order to clarify that the claim "should have been dismissed for failure to state a claim," not for lack of jurisdiction. Doc. 98 (citing *Janicki Logging Co. v. Mateer*, 42 F.3d 561, 563 (9th Cir. 1994)). The United States argues that the Court's attempt to amend its order was ineffective because Plaintiffs had already filed a notice of appeal. Doc. 114 at 24 (citing *Welch v. Fritz*, 909 F.2d 1330, 1331 (9th Cir. 1990) ("The filing of the notice of appeal ordinarily would have rendered the subsequent ruling by the district court a nullity.")).

Under 28 U.S.C. § 1331, a district court has jurisdiction over civil actions arising under federal law. A *Bivens* claim arises under federal law. *See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 394-96 (1971)*; Janicki*, 42 F.3d at 563-64. Furthermore, a plaintiff properly invokes § 1331 jurisdiction when he pleads a "colorable claim" arising under federal law, even if the claim is ultimately dismissed. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 513 (2006). Here, Plaintiffs asserted a "colorable" *Bivens* claim. *See* Doc. 79 (noting that Plaintiffs' *Bivens* claim raised a "novel issue" not yet decided by the Ninth Circuit). Dismissal, therefore, was appropriate only under Rule 12(b)(6), not Rule 12(b)(1). The Court's failure to properly state the grounds for its dismissal does not change the fact that the Court retained subject matter

jurisdiction under § 1331.  *See Janicki*, 42 F.3d at 563-64 (reaching same conclusion). An erroneous statement in an order does not deprive the Court of statutorily-conferred subject matter jurisdiction.

When a court has dismissed all of a party's claims over which it had original jurisdiction, the court has discretion to exercise supplemental jurisdiction over remaining state-law claims.  28 U.S.C. § 1367(c).  The Court has exercised that discretion and exerted subject matter jurisdiction over the remaining state law claims in this case. Doc. 98.

**IT IS ORDERED** that the United States' motion to dismiss (Doc. 114) is **granted in part and denied in part**.  Lone Wolf's claim for indemnity is dismissed; Lone Wolf's tort claims are not dismissed.

Dated this 3rd day of October, 2014.

_____
David G. Campbell
United States District Judge